Green, Judge,
delivered the opinion of the court:
These two cases by agreement are submitted together upon one statement of facts. The cases are based upon the action of the Navy Department in the military occupa *738 tion of Santo Domingo, acting under authority of a proclamation of the President of the United States. The material facts may be summarized as follows:
In 1916, the President authorized the naval forces of the United States to occupy Santo Domingo and take over its government. During the period of this military occupancy and government, an official of such government called the “food controller” issued what was known as Food Control Order No. 10. This order advised the respective plaintiffs that certain quantities of sugar then owned by each of them were requisitioned, and they were directed to hold the same, which they accordingly did, until this requisition was released. During the period while the sugar was so held, it greatly declined in value, but plaintiffs were unable to get the sugar discharged from the requisition until they had respectively executed a release of all claims of every kind and description arising out of the said food control order. The evidence leaves no question but that the officials of the military government caused them to understand that if they did not sign the releases of their claims a tax would be levied which would in the end cost more than the loss on the sugar.
The releases, which were also signed by the food controller and a naval officer, in each case stated that the Government guaranteed to the respective plaintiffs any difference that might exist on the day of release between the New York price for the sugar and a price specified in the release, which appears to have been what the parties considered to be a fair price for the sugar at that time.
There is no direct evidence as to the price of sugar in New York at the time the sugar was released, but in the releases there was a provision for issuing certificates to the plaintiff, Central Komana, Inc., in the sum of $200,640, and to the plaintiff, Ingenio Porvenir C. Por A., in the sum of $92,880, in case of a tax being afterwards levied to pay the obligations incurred by virtue of Food Control Order No. 10.
The claim 'of the plaintiffs in substance is that Food Control Order No. 10 constituted an agreement binding on the defendant to pay the difference between the price named in *739 the release and the market price on the date of the release of the sugar, or, if it can not be so construed, that the plaintiffs’ property was taken over by defendant and they are entitled to just compensation therefor. Upon either theory, plaintiffs contend that they are entitled to judgment for the amount of the difference between the market price and the agreed price stated in the release.
There are several reasons why plaintiffs can not recover here, but we need state only one, as it takes away the entire foundation of their claims. It will be observed that the cases are based on the action of the military forces of the United States acting under the direction of the President. We do not need to enter into a consideration of the reasons which actuated the President in issuing the proclamation under which the territory of a foreign nation was occupied and its government taken over by the military authorities, nor is there any need that we should consider the circumstances attending such occupation, or the manner in which the military government was carried on. In a general way, the act of taking over the Government of Santo Domingo and all the proceedings thereunder were political matters as to which we have no jurisdiction. Under the Constitution the President is the Commander-in-Chief of the Army and Navy, and this court has no jurisdiction to review his acts in exercising the power so granted in a foreign country and base a judgment thereon. The acts which are claimed to fix a liability on the defendant were done under the orders of the President and occurred in a foreign country. The policy which he adopted and the acts done pursuant thereto were matters of state and wholly within his discretion. Consequently, they did not give rise to any contract, express or implied, upon which either plaintiff could bring a suit in this court. There does not seem to be any case in which the precise question here involved has been considered by the Supreme Court, but the principles which control it are settled by a long line of decisions, which hold that such cases as we now have before us present political questions exclusively within the jurisdiction of the Executive Department of the Government. It is not necessary that we should cite the many eases that in principle support this rule, but we *740 would call attention to Marbury v. Madison, 1 Cranch 137; Perrin v. United States, 12 Wall. 315; Kendall v. United States, 12 Peters 524; and Martin Luther v. Luther M. Borden, 7 How. 1.
It follows that under the circumstances appearing in the case we can not review the action of the Chief Executive in exercising his constitutional right in order to fix a liability upon the Government.
We can very well understand why the plaintiffs consider they have suffered an injury for which they should be compensated, but the nature of their claims is such that they should be presented not to this court but to Congress.
In accordance with the foregoing opinion, it is ordered that the petitions of the respective plaintiffs be dismissed.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and Booth, Chief Justice, concur.